Municipal Corporations, 28 Cyc. p. 1311, n. 21; p. 1466, n. 42.
Pleading, 31 Cyc. p. 78, n. 95; p. 83, n. 16.

---

17197.  LOUISVILLE & NASHVILLE RAILROAD CO. v.
                        STALLINGS.

1.  "An omission to instruct the jury on the mathematical process of re-
    ducing a given sum payable in the future to its present worth, in the
    absence of an appropriate request, is not ground for a new trial."
2.  It can not be said from the facts in this case that the verdict was
    manifestly the result of prejudice or bias, or other corrupt motive.
                        DECIDED MAY 12, 1926.

    Action for damages; from city court of Atlanta—Judge Reid.
January 23, 1926.
    *Tye, Peeples & Tye,* for plaintiff in error.
    *Hewlett & Dennis,* contra.

    LUKE, J.  An engine of the Louisville & Nashville Railroad
Company, on which the plaintiff was fireman, collided with a

---

Appeal and Error, 4 C. J. p. 754, n. 86; p. 771, n. 75.
Damages, 17 C. J. p. 1062, n. 84; p. 1071, n. 70; p. 1091, n. 85.
Trial, 38 Cyc. p. 1696, n. 64.

locomotive of the Western & Atlantic Railroad near Bolton, Georgia. The plaintiff was injured, and sued both railroad companies for damages. Defendants admitted that the plaintiff had made a case against them, and that the only matter for determination was the amount of the damages. The jury found a verdict for the plaintiff for $26,171.20. When the defendants' motion for a new trial came up for final hearing the plaintiff's attorneys, with the approval of the court, reduced the verdict to $17,500, and the motion for a new trial was overruled.

After instructing the jury how to ascertain the gross amount of money that the defendant would lose by reason of his incapacity to earn money in the future, the court charged as follows: "Then, when you have ascertained that amount, since if the plaintiff recovers he has a right to have the money paid down to him now, it would be your duty to reduce the gross sum to its present cash value, which would be a less sum, and you can do this by any correct method of calculation satisfactory to yourselves, using in the calculation the seven per cent. basis, that being the legal rate of interest in this State." The exception to this charge was as follows: "Movants contend that the said charge, being unaccompanied by any instruction to the jury that, in arriving at present cash value of the gross sum, there should be a discount of such gross sum at the yearly rate of seven per cent., so that the sum allowed for future loss of earnings would represent such loss as of the times when such loss would occur, and that the plaintiff would not be allowed the use of the entire sum found during his life and have such sum or portion thereof unconsumed at the end of his expectancy of life, was insufficient to guide the jury to a correct conclusion. Movant contends further that the said charge was susceptible of the construction by the jury, and indeed to be construed by the jury, as authorizing the jury to effect the reduction to present cash value by deducting from the gross sum found seven per cent. thereof."

In the first place, was this charge inherently erroneous, in that it was likely to lead the jury to conclude that the correct answer to the problem presented was the difference between said gross sum and seven per cent. thereof? We think not. Unquestionably the jury had the right to use "any correct method of calculation satisfactory to themselves;" and, with equal certainty, seven per cent.

being the legal rate of interest in this State, calculation on a "seven per cent. basis" was proper. Moreover, the legal rate of interest is fixed at a rate per annum, the calculation of interest over a period of years is usually upon an annual basis, jurors are presumed to be of at least average intelligence, and this court will not assume that the jury was misled by the charge into committing such a palpable blunder. In the case of *Yellow .Cab Co.* v. *Echols,* 31 *Ga. App.* 493, 499 (*v*) (121 S. E. 247),. a charge in almost the exact language of the excerpt complained of was criticised by the plaintiff in error as not being full enough, and as being misleading to the jury; and this court held it was not error. In this connection see *So. Ry. Co.* v. *Wessinger,* 32 *Ga. App.* 559 (124 S. E. 100) ; *Merchants & Miners Transportation Co.* v. *Corcoran,* 4 *Ga. App.* 670 (*c*) (62 S. E. 130). "After instructing the jury that if they believe the plaintiff has sustained permanent injuries, they may use the mortality tables to aid in ascertaining his probable length of life, the court should inform the jury how to estimate the damage after ascertaining the expectancy of the plaintiff. But if general instructions are given on the subject of the ascertainment of damages, more specific instructions on the subject, if desired, should be duly requested." *So. Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147 (4) (45 S. E. 1000). In the case of *L. & N. R. Co.* v. *Trout,* 141 *Ga.* 123 (80 S. E. 623), Justice Evans uses the following language: "Complaint is also made that the court omitted to give in charge to the jury the mathematical process of reducing a sum payable at a future time to its present worth. Jurors are selected from the enlightened and intelligent citizens of the community, and there is no presumption of their inability to solve a mathematical problem of this kind. If a party is distrustful of a jury's ability in this regard, a timely written request, accurately stating the rule, should be made." There was no error in the charge.

The only other exception was that the verdict was excessive. The evidence is voluminous, and we shall not attempt to state it with any degree of fullness. However, there was evidence to the following effect: Plaintiff was forty-five years of age, and was in sound health prior to the time he was injured. As a fireman he could by working every day earn $190 per month. At times he worked as an extra engineer, and an engineer earned more than a

fireman. Sometimes he did not make as much as $100 per month. It was not unusual for him to make as much, as $150 per month. Plaintiffs in error introduced pay-checks covering a period of approximately nineteen and one half months, which indicated that plaintiff's average earning capacity for that time approximated $142 a month. Since being hurt the defendant had earned as much as $70 a month. The end of the plaintiff's spine, or coccyx, was broken. About one third of the ligament that connected the lower bone of one of his legs with his knee-cap was severed, the use of the leg being greatly impaired, and the injury to the knee being permanent. The plaintiff suffered severe bruises about his head and body, and had a headache once a day because of his injuries. He suffered intense pain, was very nervous, and his memory was impaired. The jury evidently chose to believe the plaintiff's version of the affair. This they had a right to do, and this court can not say that the verdict was excessive.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*