*Walter G. Park, solicitor,* contra.

---

### 230. SCRIBNER'S SONS *v.* MUTUAL BUILDING CO.

1. Where the question in a case is one of fact, every presumption is in favor of the verdict of the jury, that they found what was the truth about the matter; and the record must affirmatively show that the verdict was contrary to law, before it can be set aside. *Maddox* v. *Cross,* 80 *Ga.* 105.

2. Where two verdicts have been rendered in favor of the same party on substantially the same issues of fact, and two new trials have been granted by the presiding judge, the rule of discretion applicable to the first grant of a new trial has no application; and if the evidence on the last trial, although conflicting, supported the second verdict it should not be set aside.

Certiorari, from Fulton superior court—Judge Pendleton. January 29, 1907.

Submitted March 26,—Decided March 28, 1907.

*Thomas L. Bishop,* for plaintiffs.

*Etheridge & Etheridge,* for defendant.

RUSSELL, J. It appears from the record that the plaintiffs sued the defendant for damages to certain books stored in the defendant's building, and recovered a verdict for fifty dollars and costs. The case was carried to the superior court by certiorari, and a new trial ordered. It further appears, that this is the third trial awarded the defendant on the same state of facts, and that no error of law contributed to these verdicts. It is not only true that a party has a property right in a verdict, but it is also true that it is one of the prime objects of the law that there shall be somehow and somewhere an end to litigation. If this were a case of a first verdict, even though the evidence fully authorizes the finding of the jury, we should not interfere with the discretion vested in the judge of the superior court. But due regard to the prerogative of the jury to decide issues of fact, as well as to the adjudications of our Supreme Court, places the second grant of a new trial on a different footing from the first grant. And we may say that the force of the argument is increased where, as in this case, the third grant of a new trial upon the same issues of fact is involved. The practical effect of it is to suggest, if not indeed to dictate, to the jury on the next trial, that they *shall* believe the witnesses which the preceding juries have not preferred, and *shall* disregard those witnesses whom their predecessors have preferred to credit. It is well settled that "where a second verdict has been rendered on substantially the same issues of fact in favor of the same party, the rule of discretion applicable to the first grant of a new trial does not apply, and if at the last trial there was nothing objectionable in the rulings of the presiding judge, and the evidence, though conflicting, supported the second verdict, it should not be set aside." *Lewis* v.

*Equitable Mortgage Co., 99 Ga.* 336; *Veal* v. *Robinson, 76 Ga.* 838. In *Dethrage* v. *Rome, 125 Ga.* 806, the Supreme Court says: "The liberality of indulgences by this court in favor of the discretion of the trial court in the first grant of a new trial will not be extended to a second. In the first instance the discretion will be sustained, when questions of evidence are involved, almost as a matter of course; but not so with subsequent trials. There must be an end to litigation; and after the first grant of a new trial, if the matter in controversy be one of fact for the jury, and for a second time in passing upon the same facts the verdict upon the question at issue be concurrent with the first, the mere discretion of the court can play but little part in the second motion for a new trial." And it may be remarked that this is especially true where the subject-matter of that discretion is a verdict being passed upon by the judge of the superior court as a reviewing court, and where the witnesses were not subject to his sight or hearing, as in trials in his own court. We could cite a longer array of authorities sustaining this proposition, but deem it unnecessary. As was held in *Cook* v. *Western & Atlantic Railroad, 72 Ga.* 748, "The discretion of the presiding judge in granting a first new trial had been exhausted in the case, and the grant of another was error."

It is insisted by counsel for the defendant that the plaintiffs could not recover, because the evidence showed that there was no defect in the pipe which burst, or that, if there was such a defect, it was not known or could not have been known either to the plaintiffs or the defendant; that the cause of the bursting of the pipe was an act of God. Whether these contentions were well sustained was a question for the jury. The jury had just as good reason for believing that the pipe which discharged the water that damaged the plaintiff's books was improperly installed and negligently maintained in the building by the landlord as that the leakage was caused by divine intervention. For while there was some testimony that the pipe was in perfect condition and the rain was unprecedented, there was testimony for the plaintiffs that the water-pipe was defective, and certainly defectively constructed,—not that the pipe burst, but, as testified by one of the plaintiff's witnesses, "the pipe was hanging down, the joint pulled out, and the hanger hooks pulled out of the wall." To our mind this would indicate defective plumbing, if not defective piping; for both of which the landlord

was responsible. The jury may have taken this view of the case, and, in any event, with causes of the damage testified to, they are the proper judges as to which was the true cause. As has heretofore been held by this court in *Georgia So. Ry. Co.* v. *Barfield,* ante, 203, "No injury can be said to be the act of God which can, under any fair view, be attributed to the negligence of man." The jury seems to have taken the defendant's view as to any damages resulting to the plaintiffs' books which were stored in the hallway; for while the plaintiffs sued for $98, the verdict was only for $50; and while the defendant claimed that the plaintiffs had the only key to the room in which the plaintiffs' books were stored, the evidence is ample to show that the defendant's building was a large office structure with a complete janitor service, and that access could have been had to the room. This phase of the evidence, however, relates to the removal of the books from the room after it was flooded; and whether the plaintiffs' books were removed or not, or whether it was the duty of the defendant's janitor to remove them or not, if they were deluged by a defectively constructed pipe unquestionably maintained by the landlord for the benefit of the entire building, and which some of the evidence shows was defective and defectively constructed, the plaintiffs would be entitled to recover the damages entailed upon them, whether the books were removed or not. The cases cited by defendant are not in point.

*Judgment reversed.*