The jury is the final arbiter of fact. After the verdict the view of the evidence which is most favorable to upholding it must be taken, and where supported by evidence and approved by the trial judge, the same will not be set aside by this court. See Bell Bros. v. Aiken, 1 Ga. App. 36 (2) (57 S.E. 1001); Allen. v. Allen, 71 Ga. App. 274 (1) (30 S.E.2d 665); Scribner's Sons v. Mutual Bldg. Co., 1 Ga. App. 527 (1) (58 S.E. 240); Miller v. Central of Ga. Ry. Co., 16 Ga. App. 855
(87 S.E. 303).
 DECIDED MARCH 19, 1948.
The defendant in error H. E. Crane, trading as Crane Motor Company, hereinafter referred to as plaintiff, brought a suit *Page 688 
against the plaintiff in error, Agricultural Insurance Co. of Watertown, N. Y., hereinafter referred to as defendant, in the Civil Court of Fulton County, to recover $1875, alleged to be the value of an automobile stolen from the plaintiff. The petition further alleged that, at the time of the theft, there was of force and effect between the parties a policy of insurance protecting the defendant from loss by theft of the automobile in question. The jury trying the case returned a verdict in favor of the plaintiff for $2062.50. The plaintiff wrote off a sufficient amount of this verdict to reduce it to $1875, and judgment was accordingly entered.
The defendant made a motion for a new trial on the general grounds, which was later amended by adding special ground 4, as follows: "The policy of insurance sued on was issued for a period of one year from September 25, 1946, contained the following conditions: `On or before the 15th day of each month, the insured shall render to the company a statement of the actual cash value of all automobiles at risk hereunder (showing separately value and each location of new automobiles, second hand automobiles, including automobiles used in repair service, and the amount of the insured's equity if any, in automobiles consigned to the insured for sale), at the close of business on the last business day of the preceding month.'
"`The company, through any authorized representative and at all reasonable times, shall have access to the insured's books and records for the purpose of determining any fact relating to this insurance. Any evasion or attempted evasion by the insured in connection with monthly statements, payment of premium hereunder, or any matter relating to this insurance shall void such policy and shall be an absolute defense to any suit or action brought under such policy.'
"`A deposit premium of $100 shall be due and payable upon the attachment of this insurance. The earned premiums for insurance in force under this policy shall be computed monthly by applying pro rate of the annual rate to the amount of risk hereunder during each month, as shown in the insured's monthly statement. Whenever the aggregate of the monthly earned premiums exceeds the deposit premium the excess shall be due and payable and thereafter all earned premiums shall be due and payable at the end of each month.' *Page 689 
"This form is subject to the exclusions, conditions and other terms of such policy which are not inconsistent herewith.'
"Said policy of insurance further provides: `Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.'
"The plaintiff testified as follows: `My instructions from Mr. Hudson were, or my understanding was, that I was to report the amount of cars in dollars and cents on the last day of each month so that a premium could be fixed covering those cars. I think I paid $100 initial premium; Mr. Hudson handled the whole thing. That was the down payment before the reporting became necessary. I don't know whether I have ever paid any additional premiums since then. I wouldn't know whether I paid any more than $100. Mr. Hudson handles my insurance and I gave him a lump sum for my house and my place and a bunch of stores and I pay it all at one time; all the insurance is figured in a lump sum. I don't question Mr. Hudson about the insurance and whether it was on this policy in question now, I don't know.
"`I know there would be no premium earned under this reporting form unless I had reported something. He has, I think all reports on the whole policy. I said Mr. Hudson has the reports that I sent him. Part of the time they were sent to him; part of the time I taken them up; part of the time he picked them up. I didn't keep a copy of those reports; I didn't think it would be necessary to have and I didn't keep a copy of the reports that were made. I sent them to Mr. Hudson. I put that much confidence in Mr. Hudson and let him handle it. The only thing I have got is my books and card system of the amount we had on hand at that time.'. .
"`I don't recall the amount of cars I had up there at Ellijay from the time this policy was taken out September 25, 1946, until I claimed this loss; your reports will show. The reports to the insurance company will show the amount in dollars and cents. I am speaking of the reports I gave to Mr. Hudson. That's the only person I ever made any reports to; that's my instructions, to make my reports to him and he would report to the company.'
"E. T. Hudson, a witness for the defendant, testified as follows: `I am the agent for the Agricultural in Ellijay, Georgia. *Page 690 
I know Mr. Crane. I issued the policy to him he is claiming under now.'
"`Mr. Crane didn't make any of the required written reports of automobiles on hand under this policy prior to the time of this alleged theft; he never made a report under this policy. I did get reports under this policy.
"`This Reporting Form 3 Policy showing values on hand May 9, 1947, I think was received on the 6th and 15th. That's the day it was reported and I imagine it was on the same day. I don't have it marked on there when I got it. I sent those reports to the company immediately after I received them. I received these others first. The inception of the policy was in September, 1946, and then he made up this for October, 1946; November 1946; December, 1946; January, 1947; February, 1947; and March, 1947, and gave these — I think his daughter gave these to me in May, along about the 21st, I imagine it was. Of May, 1947, and I immediately mailed them to Hurt and Quin. Then, Mr. Crane requested in May that this policy be canceled. I took it down to Hurt and Quin and told them that Mr. Crane would like to have this policy and they said it would be all right, just to take a lost-policy receipt from him so I did that and turned the original policy over to him. They asked me at that time to get these because they didn't have them. The purpose of these reports is to figure the premium. It's all based on the amount of cars you have. I got these two then and to bring it up to the time it was canceled, then I got the one for May and the one for April. I got them on the 15th day of June. You say all of those reports were received by me after this theft. First in May, 1947, and the last two in June, 1947. You say those are all the reports I ever received. Under this policy. He had had policies previous to this, but these were under this particular policy.
"`He pays an initial premium, a deposit, of $100 and it's all based upon the number of cars you have during the month.
"`These reports I have in my hand are all of the reports I have ever received under the contract he is suing on. The first were handed me in May and the balance in June.'
"`Boyce E. Tharpe, another witness for the defendant, testified as follows: `I am with Hurt and Quin Inc. They are the general *Page 691 
agents for Empire State Underwriters and Agricultural Insurance Company. I am assistant to the accounting department; assistant manager of the accounting department. It is part of my duties to receive reports from agents on reports from insurance.
"`After I verify the reports and all, I put my initials, O.K. and my initials. I verify them as to the return and premium. This is the date we received these eight monthly reporting forms from Mr. Crane, right here. (May 23, 1947 and June 16, 1947). . . This is the date we completed it. (May 26 and June 23). I verify it and send him two copies and he keeps one copy and sends one to the insured. This is the original sent me by the agent.
"`I couldn't say that those are all the reports I got from Mr. Crane; I couldn't say that they are all I know of. They came from my office; I couldn't say that this is all, but I imagine so. Let's see, when did that policy start? September, 1946, October, November, December, January, February, March, April and this one is June, May 1st to the 9th; that's right. Those are all we received under that policy.'
"The court charged the jury as follows: `Gentlemen, the policy provides that on or before the 15th day of each month the insured shall render to the company a statement of the actual cash value of all automobiles at risk hereunder, showing separately values at each location of new automobiles, second-hand automobiles, including automobiles used in repair service, and the amount of the insured's equity, if any, in automobiles consigned to the insured for sale, at the close of business on the last business day of the preceding month. Now, gentlemen, that is a condition required of the plaintiff in this case, to file these reports before he is entitled to recover if a loss occurs.
"`Gentlemen, if the plaintiff in this case gave these reports to an agent of the defendant company up at Ellijay, Georgia, I believe his name was Hudson — if these reports were made to him within 15 days after the close of each business month, then the company here in Atlanta would be bound by the delivery to the agent in Ellijay, Georgia, of these reports if he delivered them within 15 days on the previous month's business. Then, gentlemen, if the loss subsequently occurred, the plaintiff in the case would be entitled to recover. *Page 692 
"`Gentlemen, the policy covers the group automobiles of an automobile agent buying and selling cars. It is not necessary for this plaintiff to immediately report the ownership or the sale of a car to the insurance company. That is covered by his monthly reports; and if, during the time this policy was in effect, the plaintiff in this case purchased an automobile and that automobile was lost to him by theft, then, with the other conditions I have stated to you, the plaintiff would be entitled to recover the reasonable market value of the automobile at the time the loss occurred.'
"Movant avers that said charge was erroneous and hurtful and harmful to movant for the following reasons, to wit: (a) Because as movant avers it affirmatively appears from the vague and equivocal testimony of the plaintiff and the positive testimony of the two witnesses for the defendant that the required reports were not made until after the alleged theft;
"(b) Because as movant avers it affirmatively appears from the testimony of all of these witnesses that only the down payment on the premium of $100 was made by plaintiff up to the time said alleged theft was reported when it clearly showed as movant avers that the required reports could not have been made to the company before the loss occurred without the necessity of additional premium;
"(c) Because said charge was an expression or intimation on the part of the trial court that there was an issue of fact as to whether the required reports had been made, when, as movant avers, there was no issue as to when said reports were made to the company through its agent, it affirmatively appearing that no reports were received by the company or its agent until May 23rd and June 16th, 1947 subsequent to said alleged theft of the previous March 28, 1947."
The trial judge overruled the motion for new trial as amended, and this judgment is assigned as error.
Reference to excerpts from the policy of insurance, as quoted in the special assignment of error, discloses that the insured was required to *Page 693 
make certain reports to the company on or before the 15th day of each month as to the actual cash value of all automobiles on hand at the close of business on the last business day of the preceding month; also that the policy provided that "payment for loss may not be required nor shall action lie against the company, unless as a condition precedent thereto the insured shall have fully complied with all the terms of the policy."
The sole issue in this case is whether or not there is sufficient evidence to authorize a finding that the reports required by the policy were made by the plaintiff and delivered into the possession of the defendant's agent, Mr. E. T. Hudson, at Ellijay, within the time required by the terms of the policy. If the evidence authorizes this finding, the general grounds of the motion for new trial are without merit because there is evidence to support the verdict; and the charge of the court, complained of in the amended motion for new trial, is without error because the questions of law submitted by the court therein are proper and pertinent questions authorized by the evidence. On the other hand, if a finding is demanded by the evidence to the effect that the notices were not given as required by the terms of the policy, then and in that event the evidence fails to support the verdict, and the charge of the court complained of in the special ground of the amended motion is erroneous as being unauthorized by the evidence. The sufficiency of the reports is not questioned. In fact no point is made except as to the making and filing of reports by the plaintiff with the defendant or some authorized agent of it in accordance with the terms of the policy.
Reference to the brief of evidence discloses, in addition to the evidence already quoted from the amended motion for new trial, the following testimony of the plaintiff: "From the first of this year up until now, I reported the acquisition of new automobiles to the insurance company according to instructions, and reported at the end of each month the amount of cars in dollars and cents that was on hand. Part of the time I made out the report and part of the time my bookkeeper made it out. Part of the time I would deliver them to Mr. Hudson and part of the time my bookkeeper would. I couldn't say how often he has been by for the reports; he has been two or three times, he would come in and pick up the report. He would be down there and tell me *Page 694 
my report was due, and I would get the reports made out and give them to him."
Although the testimony of Mr. Hudson is positive and unequivocal to the effect that these reports were not received until sometime after the theft of the automobile, which occurred on March 28, that all of them were received in May except two and they were received in June, and that he thereupon mailed them to Hurt and Quin Inc. (general agents for the defendant) in Atlanta, and although the testimony of Mr. Tharpe is positive and unequivocal to the effect that as an employee of Hurt and Quin the reports in question were received from their agent in Ellijay, E. T. Hudson, on the dates shown by the reports themselves (six of which were received on May 23, 1947, and the last two June 16, 1947) — yet the question as to when the plaintiff made out these reports and filed them with Mr. Hudson was one of fact for the determination of the jury. The jury found the reports to have been filed by the plaintiff with Mr. Hudson monthly as required by the policy. The testimony of the plaintiff as herein quoted authorized this finding.
The jury is the final arbiter of fact. After the verdict the view of the evidence which is most favorable to upholding it must be taken, and where supported by evidence and approved by the trial judge, the same will not be set aside by this court. SeeBell Bros. v. Aiken, 1 Ga. App. 36 (2) (57 S.E. 1001);Allen v. Allen, 71 Ga. App. 274 (1) (30 S.E.2d 665);Scribner's Sons v. Mutual Bldg. Co., 1 Ga. App. 527 (1) (58 S.E. 240); Miller v. Central of Ga. Ry. Co., 16 Ga. App. 855
(87 S.E. 303).
The judgment of the trial court overruling the motion for new trial is without error.
Judgment affirmed. MacIntyre, P. J., and Gardner, J.,concur.